## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

_____

IN RE:

C.R. STONE CONCRETE CONTRACTORS, INC.,                    Chapter 7
              DEBTOR.                    Case No. 05-11119-WCH
_____

JOSEPH BUTLER, CHAPTER 7 TRUSTEE,
              PLAINTIFF,

v.                                                        Ad. P. No. 05-1307

RICHARD ANDERSON, GILLIAN WELBY, JOHN MARINI,            (Lead Case)
PLUMB HOUSE, INC., DALTON BUILDERS, INC., JOHN
MARINI MANAGEMENT COMPANY, LENOX-NORWOOD
LLC, AND THE FRAMING COMPANY, INC.,
              DEFENDANTS.
_____

JOSEPH BUTLER, CHAPTER 7 TRUSTEE,
              PLAINTIFF,

v.                                                        Adv. P. No. 05-1241

PLUMB HOUSE, INC., RICHARD K. ANDERSON, JOHN
MARINI MANAGEMENT COMPANY, JOHN S. MARINI,
AND GILLIAN WELBY,
              DEFENDANTS.
_____

JOSEPH BUTLER, CHAPTER 7 TRUSTEE,
               PLAINTIFF,

v.                                                        Adv. P. No. 05-1346

PLUMB HOUSE, INC., TRESCA BROTHERS SAND &
GRAVEL, INC., PATRIOT HAULING CO., INC., AND
SAFECO INSURANCE COMPANY OF AMERICA,
              DEFENDANTS.
_____

JOSEPH BUTLER, CHAPTER 7 TRUSTEE,
               PLAINTIFF,

v.                                                        Adv. P. No. 05-1347

PLUMB HOUSE, INC., SAFECO INSURANCE COMPANY
OF AMERICA,
              DEFENDANTS.
_____

JOSEPH BUTLER, CHAPTER 7 TRUSTEE,
               PLAINTIFF,

v.                                                        Adv. P. No. 05-1348

JOHN MARINI MANAGEMENT COMPANY AND LENOX-
NORWOOD LLC,
              DEFENDANTS.
_____


## MEMORANDUM OF DECISION

1

## I. INTRODUCTION

The matters before the Court are the "Motion to Dismiss Adversary Complaint of Defendants John Marini, John Marini Management Company, Lenox-Norwood LLC, and The Framing Company, Inc." and the "Defendant's [sic] Emergency Motion to Dismiss Plaintiff's Complaint to Enforce Judicially Dissolved Mechanic's Lien, Expunge the Recording of the Complaint from the Registry of Deeds and for Rule 11 Sanctions" (collectively, the "Motions to Dismiss") filed in adversary proceeding numbers 05-1307 (the "Lead Case") and 05-1348, respectively, prior to their consolidation on April 14, 2010.[1]  Through the Motions to Dismiss, defendants John S. Marini ("Marini"), John Marini Management Company ("Marini Management"), Lenox-Norwood LLC ("Lenox"), and The Framing Company, Inc. ("Framing Co.," collectively, the "Marini Defendants")[2] seek to dismiss several counts of the complaints now before me for failure to state a claim upon which relief can be granted.  Joseph G. Butler (the "Trustee"), the Chapter 7 trustee of the estate of C.R. Stone Concrete Contractors, Inc. (the "Debtor"), opposes.  For the reasons set forth below, I will grant the Motions to Dismiss with respect to Count XIV of the complaint filed in the Lead Case (the "Omnibus Complaint") only and otherwise deny them.

## II. BACKGROUND

The Debtor filed a voluntary Chapter 11 petition on February 18, 2005, but the case was subsequently converted to one under Chapter 7 on August 17, 2005.[3]  The Trustee was appointed two

---

[1] *See* Adv. P. No. 05-1307, Docket No. 129.

[2] Identification of these parties as the "Marini Defendants" is meant for ease of reference and does not constitute a finding that these entities are the alter ego of Marini.

[3] All references to the Bankruptcy Code shall be to 11 U.S.C. § 101, *et seq.* as in effect prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of

days later.  Prior to the conversion and while the Debtor was still operating as a Chapter 11 debtor-in-possession, the Debtor commenced several adversary proceedings.  Upon conversion, however, the Trustee, as the representative of the Debtor's estate, was substituted as the plaintiff in all actions. As all these proceedings give rise to common questions of fact or law, I granted the Trustee's motion for consolidation on April 14, 2010.  Before delving more deeply into the procedural history of these cases, a review of the complex factual background leading to the Debtor's bankruptcy filing, by way of the allegations set forth in the complaints that I must accept as true,[4] is necessary to place the present dispute in context.

B. The Debtor's Factual Allegations[5]

The Debtor is a Massachusetts corporation that operated a business performing concrete contracting, design, and installation in all phases of construction.[6]  Christopher Stone ("Stone"), the president of the Debtor, incorporated the Debtor in 2000 and operated it with increasing profitability between the years of 2001 and 2004.[7]  As of 2004, the Debtor "was the largest non-union cast in place concrete contractor in Massachusetts, with 140 employees during peak periods and was on

_____

2005, Pub. L. No. 109-8, 119 Stat. 23 ("BAPCPA").

[4] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[5] The following recitation of the factual allegations set forth in the Omnibus Complaint is taken in large part from my prior Memorandum of Decision regarding the disapproval of the Trustee's proposed settlement of the present adversary proceedings.  *See C.R. Stone Concrete Contractors, Inc., v. Anderson (In re C.R. Stone Concrete Contractors, Inc.)*, 346 B.R. 32, 35-40 (Bankr. D. Mass. 2006).

[6] Omnibus Complaint, Adv. P. No. 05-1307, Docket No. 1, ¶¶ 1, 14.

[7] *Id.* at ¶¶ 13,15.

track to achieve its highest net profit ever."[8]

Defendant Richard K. Anderson ("Anderson") is the principal and "primary decision maker" of the defendants Plumb House, Inc. ("Plumb House") and Dalton Builders, Inc. ("Dalton," collectively with Anderson, the "Anderson Defendants").[9]   Dalton and Plumb House are Massachusetts corporations engaged in the business of general contracting and the Debtor was a concrete subcontractor for Plumb House on various projects.[10]   Plumb House is the general contractor on two construction sites, The Ridge in Waltham, Massachusetts (the "Waltham Project") and The Village at Quarry Hills in Quincy, Massachusetts (the "Quincy Project").[11]

The Debtor hired Gillian Welby ("Welby") in December 2003 as the Debtor's Project Manager,[12] and Welby served in that capacity until January 5, 2005.[13]   As Project Manager, Welby was responsible for the Debtor's project accounting, billing and change order submissions on the various projects for which the Debtor was a subcontractor.[14] Welby, who the Debtor claims was also the "former significant other" of Stone,[15] was not authorized to sign certain documents, including

---

[8] *Id.* at ¶ 15.

[9] *Id.* at ¶ 2.  Identification of these parties as the "Anderson Defendants" is meant for ease of reference and does not constitute a finding that these entities are the alter ego of Anderson.

[10] *Id.* at ¶¶ 5-6, 25-26.

[11] *Id.* at ¶¶ 25-26.

[12] Omnibus Complaint Ex. 1, Gillian Welby's Employment Agreement with C.R. Stone Concrete Contractors, Inc.

[13] Omnibus Complaint ¶ 3.

[14] *Id.*

[15] *Id.* at ¶ 19.

requisitions and lien waivers, without Stone's approval.[16]

Marini is the principal and "primary decision maker"of Marini Management, Framing Co., and Lenox.[17]    Marini Management is a Massachusetts corporation in the business of general contracting.[18]    Lenox is a Massachusetts corporation which owns a construction site in Norwood, Massachusetts (the "Norwood Project").[19]    The Norwood Project is managed by the Framing Co. and Marini Management is the general contractor on that site.[20]

The Debtor alleges that Anderson and Marini are friends and business associates.[21]    In early 2004, on the recommendation of Anderson, the Debtor submitted a proposal to Marini to undertake concrete subcontract work at the Norwood Project.[22]    Marini accepted the Debtor's bid for the Norwood Project in the amount of $2,200,000 by executing the Debtor's project proposal on March 10, 2004.  Marini approved a second subcontract for an additional $150,000 of work on May 10, 2004.[23]    The Debtor also subcontracted for the two Plumb House projects, and on July 2, 2004, Welby, on the Debtor's behalf, executed subcontracts on the Waltham and Quincy Projects for

---

[16] *Id.* at ¶ 27.

[17] *Id.* at ¶ 4.

[18] *Id.* at ¶¶ 7, 22.

[19] *Id.* at ¶¶ 8, 22.

[20] *Id.* at ¶¶ 9, 22.

[21] *Id.* at ¶ 18.

[22] *Id.* at ¶ 22.

[23] *Id.* at ¶¶ 23, 24.

5

$1,025,000 and $1,800,000, respectively.[24]

The Debtor claims that it delivered "substantial amounts of expensive equipment, materials and tools" to the Norwood, Quincy and Waltham Projects to perform the subcontracts.[25]  According to the Debtor, as work on the Quincy Project progressed Anderson advised Stone in the fall of 2004 that the Debtor would need to complete the project in five months instead of the originally planned year and a half.[26]  Although under similar circumstances the Debtor had previously required a change order to the subcontract price to reflect the expedited nature of a project, the Debtor alleges that Stone and Anderson negotiated and orally agreed that there would be no such change order in exchange for Dalton providing free additional manpower to assist the Debtor.[27]

During the fall and winter of 2004, while the Debtor was working on the Norwood, Quincy and Waltham Projects, the Debtor alleges that Welby and Anderson with the assistance of Marini "joined together to strip [the Debtor's] lucrative business away from it and transfer it to Anderson."[28]  During this time, Anderson is alleged to have told Plumb House employees that he wanted Welby and other employees of the Debtor to work for Plumb House and Dalton and that within five years

---

[24] *Id.* at ¶¶ 25, 26.

[25] *Id.* at ¶ 28. Specifically, the Debtor claims that it delivered $800,000 worth of concrete forms, supplies, equipment, tools and a forklift to the Norwood Project, a crane and construction materials with a value of $330,000 to the Waltham Project, and $1,120,000 of property to the Quincy Project consisting of a crane and various other concrete construction equipment. *Id.*

[26] *Id.* at ¶ 29.

[27] *Id.* at ¶ 29.

[28] *Id.* at ¶ 30.

ninety-percent of Plumb House revenue would come from concrete construction work.[29]

As part of the alleged conspiracy among Welby, Anderson and Marini, Welby allegedly failed to submit prepared draft change orders to the Marini Defendants for the Debtor's extra work at the Norwood Project.[30]  Concerning the Norwood Project, Welby allegedly went beyond her authority and forged Stone's signature on lien waivers and requisitions for project work.[31]  Welby also allegedly did not submit change orders for the Debtor's extra work at the Quincy and Waltham Projects.[32]

In December of 2004, the Debtor alleges that, at Anderson's direction, Plumb House withheld payment of the Debtor's submitted requisitions of November 30, 2004, on account of alleged expenses Dalton incurred assisting the Debtor on the expedited Quincy project.[33]  The Debtor alleges that Plumb House withheld payments in contravention of the oral agreement between Stone and Anderson regarding same.[34]

At the same time, Welby had allegedly forged Stone's signature on various requisitions and as of December 2004 had stopped preparing and submitting requisitions for the Debtor's work at the Norwood, Quincy and Waltham Projects.[35]  The net effect of Welby's actions, claims the Debtor,

---

[29] *Id.* at ¶ 31. *See also* Omnibus Complaint Ex. 6, Witness Statement of Brian Armitage ¶¶ 4, 5, 6.

[30] Omnibus Complaint ¶ 32.

[31] *Id.* at ¶ 33.

[32] *Id.* at ¶ 32.

[33] *Id.* at ¶ 34.

[34] *Id.*

[35] *Id.* at ¶ 35, 36.

7

was to substantially underbill for the Debtor's work on all three projects and to stifle the Debtor's

cash flow by January, 2005.[36]  The Debtor alleges that both Anderson and Marini were aware of and

assisted in Welby's actions to benefit Anderson.[37]  Anderson, Marini and Welby also allegedly

contacted the Debtor's suppliers and encouraged them to demand payment from the Debtor despite

any contrary terms in the suppliers' agreements with the Debtor.[38]

During the first week of January, 2005, Stone requested an advance from Anderson of

$200,000 upon the Debtor's December 2004 work to which Anderson allegedly agreed.[39]  On

January 7, 2005, Stone visited the Plumb House office to receive the advance, but instead was given

a letter, titled "Termination of Contract," which terminated the Debtor's subcontracts on the Quincy

and Waltham Projects.[40]  Specifically, the Termination of Contract stated:

> Please be advised that Plumb House, Inc. is terminating your subcontracts at both
> Quarry Hills (Quincy) and The Ridge (Waltham) for your failure to pay suppliers
> which has resulted in liens being placed on both projects, pursuant to sections 9.1 and
> 9.3 of your subcontract. Unless you give the undersigned satisfactory evidence of
> payment of all subcontractors and suppliers and removal of all liens by Tuesday,
> January 11, 2004 [sic], your contracts will terminate and we will take possession of
> all equipment and materials on site. You will also be responsible for all damages
> Plumb House, Inc. may suffer as a result of your defaults.[41]

On the same day, Anderson and Welby allegedly contacted key employees of the Debtor with

---

[36] *Id.* at ¶¶ 38, 41.

[37] *Id.* at ¶¶ 39, 40.

[38] *Id.* at ¶ 37.

[39] *Id.* at ¶ 42.

[40] *Id.* at ¶ 43.

[41] Omnibus Complaint Ex. 7. The letter was apparently erroneously dated January 7, 2004
rather than January 7, 2005.

the purpose of usurping the Debtor's work force for Plumb House.[42] The next day, the Debtor claims that Anderson held a meeting with key employees of the Debtor and advised them that the Debtor had been terminated from the Quincy and Waltham Projects and advised the Debtor's foreman on the Norwood Project that Marini would also be terminating the Debtor's subcontract on that project.[43] According to the Debtor, Anderson encouraged the employees to return to the Plumb House offices on January 9, 2005 to fill out Plumb House job applications if they wanted to keep working on the various project sites.[44]

The Debtor claims that on January 8, 2005, Stone spoke to Marini concerning the Norwood Project.[45] Marini assured Stone that the Debtor would be permitted to continue and complete its work on the Norwood Project which was, according to the Debtor, 95% complete.[46] Despite Marini's alleged assurance, Stone was notified at approximately 6:00 A.M. on January 10, 2005 that the Debtor's employees would not be permitted to work at the Norwood Project or recover any of the Debtor's property and equipment therefrom.[47] The Debtor was similarly unable to recover any property and equipment from the Quincy and Waltham Projects.[48] Later that same day, the Debtor received a letter titled "Termination of Contract/Lenox Station, Norwood, MA" from a representative

---

[42] Omnibus Complaint ¶¶ 46, 47, 48.

[43] *Id.* at ¶ 49.

[44] *Id.*

[45] *Id.* at ¶ 51.

[46] *Id.*

[47] *Id.* at ¶ 53.

[48] *Id.* at ¶ 54.

of Marini Management which stated:

> Marini Management is terminating your sub-contract dated March 23, 2004, at Lenox
> Station, Norwood, MA, for your failure to pay suppliers which has resulted in liens
> having been placed on the project and there is satisfactory evidence of further liens
> being placed imminently. Unless you give [Marini Management] satisfactory
> evidence of payment of all sub-contractors and suppliers and removal of all liens by
> Tuesday, January 11, 2005 at 4:00p.m., your contract will be considered terminated
> and [Marini Management] shall take possession of all equipment and materials on
> site. You will also be responsible for all damages Marini Management may encore
> [sic] as a result of your default.[49]

The Debtor alleges that when Welby left the Debtor's offices on January 7, 2005, she took

a laptop computer and various documents of the Debtor.[50]  The Debtor also alleges that Welby

deleted unsubmitted change orders for the Norwood Project from the Debtor's computer system,

forged Stone's signature on various documents including lien release and requisition forms, left the

Debtor's documents and records in a state of disarray and improperly delivered the Debtor's

proprietary and confidential business information to Anderson.[51]

Following termination from the Norwood, Quincy and Waltham Projects, the Debtor filed

Notices of Contract and Statements of Amounts Due pursuant to Mass. Gen. Laws ch. 254, §§ 4 and

8 against all three projects in order to preserve its mechanic's lien claims.[52]  On February 10, 2005,

Marini Management brought suit in Norfolk Superior Court[53] to discharge the Debtor's mechanic's

---

[49] *Id.* at ¶ 55; Omnibus Complaint Ex. 9.

[50] Omnibus Complaint ¶ 58.

[51] *Id.* at ¶ 59.

[52] *Id.* at ¶ 63.

[53] Marini Management brought suit in the Commonwealth of Massachusetts, Superior
Court Department, Norfolk County. The court will be referred to as "Norfolk Superior Court"
and the case will be referred to as the "Norfolk Action."

lien claim on the Norwood Project pursuant to Mass. Gen. Laws. ch. 254, § 15A. Prior to a hearing, the Debtor filed for bankruptcy relief.

    C. Procedural History[54]

    On March 7, 2005, the Debtor instituted an adversary proceeding pursuant to 11 U.S.C. § 542 seeking the turnover by the Marini Defendants and Anderson Defendants of the Debtor's property that was allegedly retained by them at the Waltham, Quincy and Norwood Projects (the "Turnover Proceeding").[55] On the same date, Marini Management sought relief from stay to resume the Norfolk Action with respect to the mechanic's lien and to amend Marini Management's pleadings to prosecute its asserted contract claims against the Debtor.[56] At the conclusion of a hearing held on March 22, 2005, I entered a formal order lifting the automatic stay "for the limited purpose of allowing Marini to continue the proceeding to dissolve the mechanic's lien pursuant to [Mass. Gen. Laws ch. 254, § 15A]."[57] Moreover, with respect to the Turnover Proceeding, I entered an order directing Marini and Marini Management to "as soon as practicable, assemble and return all of the Debtor's property within their custody."[58] Nonetheless, the Debtor alleges that much of the property

---

[54] I take judicial notice of the docket in the present case, as well as those of related cases before this Court. *See Rodi v. Southern New England School of Law*, 389 F.3d 5, 17-19 (1st Cir. 2004) (citations omitted). *See also In re C.R. Stone Concrete Contractors, Inc.*, 346 B.R. at 40-43 (discussing the events following the Debtor's Chapter 11 filing).

[55] *See* Adv. P. No. 05-1241.

[56] Motion by John Marini Management Company for Relief from the Automatic Stay, Case No. 05-11119-WCH, Docket No. 51.

[57] Case No. 05-11119, Docket No. 104.

[58] Order for Turnover by Defendants John Marini Management Company and John Marini, Adv. P. No. 05-1241, Docket No. 28, p. 2. The Order does not mention the Anderson Defendants because, according to the Debtor, they agreed to voluntarily turn over all of the

returned to it pursuant to that order was damaged and that some of its property was never returned.[59]

The Norfolk Action resumed and on April 11, 2005, the Norfolk Superior Court entered an order dissolving the Norwood Project mechanic's lien.[60]   The Debtor subsequently appealed the order to the Massachusetts Court of Appeals and while that appeal remained pending, filed suit in Norfolk Superior Court to perfect and enforce its mechanic's lien against the Norwood Project ("Lien Enforcement Action").   Thereafter, the Debtor filed a Notice of Removal seeking to remove the Lien Enforcement Action to this Court pursuant to 28 U.S.C. § 1452(a) and Fed. R. Bankr. P. 7027.[61]   Although the Marini Defendants sought a remand of the Lien Enforcement Action to Norfolk Superior Court, I denied the request on the basis that the underlying mechanic's lien issue "so affects my case that I have to hang on to it."[62]   Prior to the removal, however, Marini Management and Lenox filed the first motion to dismiss.

The Debtor filed the Omnibus Complaint on April 15, 2005, commencing the Lead Case.[63]  Despite increasing profits up until 2004, the Debtor contends that it was forced into bankruptcy because the defendants "joined together in bad faith to seize control of all of C.R. Stone's property;

---

Debtor's equipment in their possession on the eve of the hearing. *See* Omnibus Complaint ¶ 69.  I further note that the order entered on March 24, 2005, two days after the hearing.

[59] Omnibus Complaint ¶¶ 72, 73.

[60] *John Marini Mgmt. Co. v. C.R. Stone Concrete Contractors, Inc.*, No. 05-0250, 2005 WL 6199480 (Mass. Super. Apr. 11, 2005), *rev'd*, *John Marini Mgmt. Co. v. Butler*, 70 Mass.App.Ct. 142, 144, 873 N.E.2d 1150 (2007).

[61] *See* Adv. P. No. 05-1348, Docket No. 1.

[62] Transcript of Hearing on Emergency Motion to Remand Case, June 8, 2005, p. 15.

[63] *See* Adv. P. No. 05-1307.

to raid C.R. Stone's employees; and to take over the highly profitable business of [C.R. Stone]."[64] Through the Omnibus Complaint, the Debtor sought relief against the Anderson Defendants and Marini Defendants by way of: turnover of the Debtor's business and property (Count I); damages for the post-petition use of, damage to, and failure to return the Debtor's property (Count II); recovery of the Debtor's property fraudulently transferred to the Marini Defendants and Anderson Defendants (Count III); damages for the conversion of the Debtor's property (Count IV); damages for civil conspiracy to destroy the Debtor and steal its business (Count V); damages for breach of contract and to enforce a mechanic's lien against the Marini Defendants (Count VI); damages for Plumb House's Breach of Contract on the Waltham (Count VII) and Quincy (Count VIII) projects; damages for breach of the obligations of good faith and fair dealing by Plumb House and Marini Management (Count IX); damages for interference with the Debtor's contractual relationships (Count X); damages for violations of Mass. Gen. Laws ch. 93A, which prohibits unfair or deceptive acts or practices (Count XI); equitable subordination of the claims of all defendants (Count XII); recovery of preferential transfers (Count XIII); damages for violations of the automatic stay (Count XIV); damages for interference with contract rights by the Anderson Defendants (Count XVII); damages for interference with advantageous business relations by the Anderson Defendants (Count XVIII); equitable estoppel to prevent the Anderson Defendants from benefitting from their wrongdoing (Count XIX); and creation of a constructive trust to sequester the ill-gotten gains of the Anderson Defendants (Count XX).  On May 18, 2005, the Marini Defendants filed the second motion to dismiss, seeking to dismiss counts I, VI, X, XII, and XIV for either lack of jurisdiction over the

---

[64] Complaint p. 1.

13

subject matter or failure to state a claim upon which relief may be granted.[65]

On June 29, 2005, I conducted a hearing on the Motions to Dismiss and at its conclusion, took them under advisement. My consideration of the Motions to Dismiss, however, was suspended once the Debtor's case was converted to one under Chapter 7 and the responsibility for prosecuting the adversary proceedings fell to the Trustee. The Trustee sought to settle the adversary proceedings, and to that end, filed stipulations between himself and both the Marini and Anderson Defendants on March 28, 2006 and April 26, 2006, respectively.[66] Nonetheless, after a thorough review I denied the Trustee's motions to approve the stipulations, concluding he had not met his burden in demonstrating they were in the best interests of the estate.[67]

Upon the disapproval of the Trustee's proposed settlements, none of the parties took any further action in any of the adversary proceedings. Although the Motions to Dismiss remained under advisement, due to a clerical error, a decision was never rendered. As a result, the adversary proceedings remained inactive for nearly three years. During this period of inactivity, however, the Massachusetts Court of Appeals reversed the Norfolk Superior Court's judgment dissolving the Debtor's mechanic's lien and remanded it for further proceedings.[68]

Ultimately, in response to the Court's Notice of Inactivity, the Trustee filed a request for a pre-trial order on December 17, 2009. On April 14, 2010, I conducted a pre-trial status conference

---

[65] *Id.* at ¶¶ 75-172, Motion to Dismiss Adversary Complaint of Defendants John Marini, John Marini Management Company, Lenox-Norwood LLC, and The Framing Company, Inc. ("Marini Motion to Dismiss"), Adv. P. No. 05-1307, Docket No. 19.

[66] *See In re C.R. Stone Concrete Contractors, Inc.*, 346 B.R. at 43

[67] *Id.* at 51.

[68] *John Marini Mgmt. Co. v. Butler*, 70 Mass.App.Ct. at 153.

14

at which time successor counsel to the Marini Defendants called my attention to the still outstanding

Motions to Dismiss.    Realizing that the Trustee never filed a response to them since having

succeeded to the Debtor as the Plaintiff of these adversary proceedings, I ordered him to file one by

May 18, 2010, which he did.

## III. POSITIONS OF THE PARTIES

### The Marini Defendants

Turning first to the motion to dismiss Counts I, VI, X, XIII, and XIV of the Omnibus

Complaint, the Marini Defendants assert that Count I, seeking turnover of assets of the Debtor, is

moot because the Marini Defendants have already returned all property belonging to the Debtor

pursuant to my March 24, 2005 order.    Similarly, the Marini Defendants argue that Count VI,

through which the Debtor sought to enforce the mechanic's lien, is not ripe for adjudication as the

lien was previously dissolved by the Norfolk Superior Court.    With respect to Count X, which

alleges interference with the Debtor's contractual relations with Marini Management, the Marini

Defendants assert that the Debtor has not stated a claim based upon the Omnibus Complaint's

simultaneous allegation that Marini Management, The Framing Co., and Lenox are all Marini's alter

egos.    They argue that it is well established under Massachusetts law that a party cannot be sued for

interfering with its own contract.[69]    Next, relying on factors set forth in *In re APF Co.*,[70] the Marini

Defendants contend that the Omnibus Complaint fails to set forth sufficient facts to support a claim

for a preferential transfer in Count XIII.    In particular, they note the Debtor's failure to specifically

---

[69] *See Harrison v. NetCentric Corp.*, 433 Mass. 465, 744 N.E.2d 622 (2001); *Schinkel v. Maxi-Holding, Inc.*, 30 Mass.App.Ct. 41, 50, 565 N.E.2d 1219 (1991).

[70] *Pardo v. Avanti Corp. Health Sys., Inc. (In re APF Co.)*, 274 B.R. 634, 640 (Bankr. D. Del. 2001).

identify any preferential payments as well as demonstrate that if such a payment occurred, it was on

account of an antecedent debt.  Lastly, the Marini Defendants seek dismissal of Count XIV because

a corporation cannot recover damages for willful violations of the automatic stay under 11 U.S.C.

§ 362(h).[71]

Next, with respect to the motion to dismiss the Lien Enforcement Action, the Marini

Defendants reiterate their argument that the Debtor's mechanic's lien has been dissolved by the

Norfolk Superior Court and therefore not ripe for determination.  Additionally, they argue that the

Trustee is barred from pursuing this action now as it was a compulsory counterclaim to the Norfolk

Action.  The Marini Defendants contend that the only reason why the Debtor filed the Lien

Enforcement Action was to cloud the title to the Norwood Project and disrupt its financing.  As such,

they contend that Debtor's counsel should be sanctioned under rule Mass. R. Civ. P. 11 for filing

pleadings without good supporting grounds.[72]

The Trustee

By his response, the Trustee incorporates the arguments made by the Debtor in its opposing

memorandum filed prior to the conversion of the case.  First, Trustee asserts that Count I should not

be dismissed because the Marini Defendants, by asserting that they returned all of the Debtor's

property, are inappropriately challenging the allegations of the Omnibus Complaint which this Court

---

[71] *Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.)*, 346 F.3d 1, 8 (1st Cir. 2003).

[72] The Marini Defendants also assert that the breach of contract count of the Lien Enforcement Action complaint should be dismissed pursuant to Mass. R. Civ. P. 12(b)(9) as it mirrors Count VI of the Omnibus Complaint.  Mass. R. Civ. P. 12(b)(9) provides for the dismissal of a proceeding due to the pendency of a prior action in a court of the Commonwealth. In light of the removal of the Lien Avoidance Action to this Court and its subsequent consolidation with the Lead Case, this argument is moot.

16

must accept as true for purposes of the Motions to Dismiss.  Second, the Trustee contends that the Massachusetts Court of Appeals' reversal of the Norfolk Superior Court's dissolution of the mechanic's lien renders the Marini Defendants' arguments regarding Count VI and the Lien Avoidance Action moot.  Third, with respect to Count X, the Trustee notes that contrary to the Marini Defendants' assertions, the Omnibus Complaint does not allege that Marini Management, The Framing Co., and Lenox are alter egos of Marini.  Instead, it merely identifies them collectively for ease of reference.  Moreover, a veil piercing claim, even if it was raised, is a fact intensive analysis that would preclude dismissal at this stage.  Fourth, the Trustee asserts that the Marini Defendants' reliance on *In re APF Co.* is misplaced because it is not the law in this jurisdiction and is not even universally accepted in the District of Delaware.[73]  In any event, the Trustee argues, the preference claim should not be dismissed before an opportunity to conduct discovery.  Finally, although the Trustee concedes that 11 U.S.C. § 362 does not permit corporations to recover damages for stay violations, he contends that there is nothing preventing the Trustee from obtaining other relief, such as injunctive relief or equitable relief under 11 U.S.C. § 105(a).

## IV. <u>DISCUSSION</u>

In *Ashcroft v. Iqbal*, the Supreme Court of the United States explained the standard for dismissal under Fed. R. Civ. P. 12(b)(6), made applicable in adversary proceedings by Fed. R. Bankr. P. 7012(b):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim

---

[73] *See, e.g., Official Committee of Unsecured Creditors of The IT Group, Inc., v. Brandywine Apartments (In re The IT Group, Inc.)*, 313 B.R. 370 (Bankr. D. Del. 2004); *Family Golf Centers, Inc. v. Acushnet Co. (In re Randall's Island Family Golf Centers, Inc.)*, 290 B.R. 55 (Bankr. S.D.N.Y. 2003).

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" . . .

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.[74]

"In deciding a motion to dismiss, however, a court is not always limited to the facts alleged in the plaintiff's complaint."[75]  The court must also consider "facts extractable from the documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice."[76]  It is well established that a court may look to matters of public record, including its own docket.[77]  Moreover, the United States Court of Appeals for the First Circuit has previously explained that prior state court cases are public records.[78]

The Marini Defendants contend that Count I of the Omnibus Complaint should be dismissed because, pursuant to my March 24, 2005 order, they already returned all of the Debtor's property in their possession.  This argument is flawed because the Fed. R. Civ. P. 12(b)(6) standard requires that

---

[74] *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949-1950, 173 L.Ed2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556-570) (citations omitted).

[75] *Rederford v. U.S. Airways, Inc.*, 586 F.Supp.2d 47, 50 (D.R.I. 2008).

[76] *Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005).

[77] *See, e.g., Boateng v. InterAmerican Univ.*, 210 F.3d 56, 60 (1st Cir. 2000); *In re Marrama*, 345 B.R. 458, 464 (Bankr. D. Mass. 2006); *In re Hyde*, 334 B.R. 506, 508 n.2 (Bankr. D. Mass 2005).

[78] *Rasheed v. Duval*, 57 F.3d 1061, 1995 WL 365994 *1 (1st Cir.1995).

18

I accept as true the allegations contained within the complaint.[79]  The Omnibus Complaint expressly

alleges that the Marini Defendants failed to comply with my order and retained various business

assets of the Debtor.[80]  Instead, the Marini Defendants would have me assume the opposite.  As such,

dismissal of Count I is inappropriate.

Moving on, the premise of the Marini Defendants' motion to dismiss Count VI of the

Omnibus Complaint and the Lien Avoidance Action is that the Norfolk Superior Court dissolved the

Debtor's mechanic's lien, and therefore, there is nothing for the Trustee to enforce.  The subsequent

reinstatement of the lien by virtue of the Massachusetts Court of Appeals' vacation of the Norfolk

Superior Court's judgment, of which I may take judicial notice, renders their arguments moot.

Similarly, in light of the Court of Appeals' decision, sanctions against Debtor's counsel for filing

the Lien Enforcement Action are unwarranted.  Accordingly, I will not dismiss Count VI of the

Omnibus Complaint and will deny the motion to dismiss the Lien Avoidance Action.[81]

Next, the Marini Defendants assert that dismissal of Count X is warranted because one

cannot interfere with one's own contract.  This assertion, however, is based upon a fundamental

misapprehension that the Trustee alleges that Marini Management, The Framing Co., and Lenox are

all alter egos of Marini.  Having reviewed the Omnibus Complaint, I find that the identification of

these parties as the "Marini Defendants" was meant only to simplify references to them.  Although

Marini is alleged to be the "primary decision maker" of those entities, an allegation that they are his

alter egos or a claim for piercing the corporate veil is notably absent from the Omnibus Complaint.

---

[79] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.

[80] Omnibus Complaint ¶¶ 72-74.

[81] The Marini Defendants' reliance on Mass. R. Civ. P. 12(b)(9) is also

19

Consequently, the Marini Defendants have not stated grounds to dismiss Count X.

Relying on *In re APF Co.*, the Marini Defendants also assert that the Omnibus Complaint

fails to set forth sufficient facts to support a preference claim in Count XIII.   In that case, Judge

Walsh of the District of Delaware, citing *In re Valley Media, Inc.*,[82] set forth several factors that he

stated should be included in a complaint to put the defendant on notice of the basis for the plaintiff's

preferential transfer claim:

> (a) an identification of the nature and amount of each antecedent debt and (b) an
> identification of each alleged preference transfer by (i) date, (ii) name of
> debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer.[83]

A number of courts, including those in the District of Delaware, have disagreed with *In re*

*Valley Media, Inc.* and its progeny.[84]   For example, in *In re The IT Group, Inc.*,[85] Judge Lindsey, also

of the District of Delaware, declined to follow *In re Valley Media, Inc.*, reasoning that:

> While plaintiffs should be encouraged to provide specific information in support of
> their claims whenever possible, to require them to do so in their initial pleading in
> all cases, particularly with the specificity demanded by *Valley Media*, is in this court's
> view inappropriate and unnecessarily harsh. The fact that Bankruptcy Rule 7008,
> which contains special pleading requirements in certain adversary cases before

---

[82]   *Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189 (Bankr. D.
Del. 2003)

[83]   *In re APF, Co.*, 274 B.R. at 640 (*quoting In re Valley Media, Inc.*, 288 B.R. at 192)
(quotation marks omitted); *see also  Posman v. Bankers Trust Co. (In re Lomas Fin. Corp.)*, No.
Adv. A-97-245, 1999 WL 33742299 (Bankr. D. Del. July 28, 1999).

[84]   *See, e.g., Gold v. Winget (In re NM Holdings Co., LLC)*, 407 B.R. 232 (Bankr. E.D.
Mich. 2009); *Gold v. Nova Indus., Inc. (In re NM Holdings Co., LLC)*, 376 B.R. 194 (Bankr.
E.D. Mich. 2007); *Limor v. Buerger (In re Del-Met Corp.)*, 322 B.R. 781 (Bankr. M.D. Tenn.
2005); *Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation, Inc.)*, 319
B.R. 324 (Bankr. D. Conn. 2005); *In re The IT Group, Inc.*, 313 B.R. at 370; *In re Randall's
Island Family Golf Centers, Inc.*, 290 B.R. at 55.

[85]   *In re The IT Group, Inc.*, 313 B.R. at 373.

bankruptcy judges, fails to provide any such additional requirements for preference actions indicates it was intended that the adequacy of pleadings in such actions be judged under the notice pleading standard of Civil Rule 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." So long as the defendant is provided "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the complaint should not be dismissed for failure to state a claim. Further elaboration, if required, may be obtained through the discovery process.[86]

I agree with Judge Lindsey's conclusions and will not apply *In re Valley Media*'s heightened pleading standard to the present case.

The sole allegation relating to a Marini Defendant receiving a preferential transfer states:

By unilaterally and wrongfully withholding monies due to CR Stone, and paying alleged claims of Dalton Builders, Plumb House and John Marini before they were due, each of those Defendants received preferential payments, at a time when CR Stone was rendered insolvent by the conduct of the Defendants, in violation of 11 U.S.C. § 547.[87]

In *Ashcroft v. Iqbal*, the Supreme Court stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[88]   In the present case, I find that the Omnibus Complaint satisfies the liberal pleading standard set forth by Fed. R. Civ. P. 8(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7008(a).  Although the allegation lacks specificity, it is sufficient to put Marini on notice that the Trustee's preference claim arises from his alleged retention of funds owed to the Debtor and subsequent allocation of those funds to an alleged claim

---

[86] *Id.* (citations omitted).

[87] Omnibus Complaint ¶ 143.

[88] *Ashcroft v. Iqbal*, 129 S.Ct. at 1950.

21

owed to him by the Debtor.[89]   Therefore, I will not dismiss Count XIII of the Omnibus Complaint.

Lastly, the Marini Defendants seek dismissal of Count XIV on the basis that, as a corporation, the Debtor is not entitled to damages under 11 U.S.C. § 362(h).[90]  In *In re Spookyworld, Inc.*, the First Circuit held that the reference to an "individual" in 11 U.S.C. § 362(h) precluded corporations from bringing suit under that section to obtain damages for violations of the automatic stay.[91]  The First Circuit noted, however, that:

> Corporations are not wholly without remedy for violations of the automatic stay: under 11 U.S.C. § 105(a) (2000), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." . . .
>
> * * *
>
> After enactment of section 362(h), corporations (and other non-"individual[s]") remain free to petition bankruptcy courts to award damages for automatic stay violations pursuant to their section 105(a) power. . . . A discretionary remedy is not as good as one that is assured, . . . but Congress could easily have thought that corporations needed less protection.[92]

---

[89] I am also unimpressed by the Marini Defendants' suggestion that the payment of an "alleged claim" of Marini's is an admission that no antecedent debt existed.  I note that the Omnibus Complaint also sets forth a cause of action for conversion (Count IV) and that the Trustee is free to plead alternative causes of action.

[90] Prior to the enactment of BAPCPA, 11 U.S.C. § 362(h) provided in relevant part:

An *individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h) (emphasis added).  As part of BAPCPA, 11 U.S.C. § 362(h) was amended and re-designated 11 U.S.C. § 362(k).

[91] *In re Spookyworld, Inc.*, 346 F.3d at 10.

[92] *Id.*

Although the Trustee, acting on behalf of the corporate Debtor,  is not without recourse for the Marini Defendants' alleged violations of the automatic stay, he is unable to avail himself of the remedy provided by 11 U.S.C. § 362(h).  Unfortunately, the sole relief requested under Count XIV are damages pursuant to 11 U.S.C. § 362(h).[93]  As such, Count XIV, as pled, does not state claim upon which relief can be granted.[94]

## V. CONCLUSION

In light of the foregoing, I will enter an order granting the Motions to Dismiss in part, dismissing Count XIV of the Omnibus Complaint, and denying them in part.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: June 9, 2010

---

[93] Omnibus Complaint ¶¶ 144-146.

[94] I note, however, that the Trustee is free to seek an amendment to the Omnibus Complaint requesting a remedy under 11 U.S.C. § 105(a) for any alleged violations of the automatic stay committed by either the Marini or Anderson Defendants.

23