UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re:<br><br>C.R. STONE CONCRETE CONTRACTORS, INC.<br><br>                Debtor,<br><br>JOSEPH BUTLER, CHAPTER 7 TRUSTEE OF C.R. STONE CONCRETE CONTRACTORS, INC.<br>                Plaintiff,<br>vs.<br><br>RICHARD ANDERSON ET AL.,<br>                Defendants. | Civil Action No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR WITHDRAWAL OF REFERENCE**

Pursuant to Bankruptcy Rule 5011(a), Local Bankruptcy Rule 5011-1 and 28 U.S.C. § 157(d) and through the underlying motion, Defendants seek the withdrawal of the reference in this proceeding from the United States Bankruptcy Court for the District of Massachusetts, where it is presently pending as Butler v. Anderson, et al., Adversary Proceeding No. 05-01307. As detailed herein, withdrawal of the reference is required given that Plaintiff Joseph Butler, Chapter 7 Trustee of C.R. Stone Concrete Contractors, Inc. ("Plaintiff" or "Debtor") has brought twenty (20) claims against Defendants, which claims include state common law claims and claims under Title 11 that principally (if not entirely) seek legal, and not equitable relief. From the outset of the adversary proceeding, as early as May 18, 2005, Defendants demanded a jury trial with respect to these claims and they do not consent to a jury trial in bankruptcy court. Accordingly, this Court should withdraw the reference in this bankruptcy proceeding.

# BACKGROUND

Procedural History

In March 2005, C.R. Stone filed for Chapter 11 bankruptcy. This bankruptcy was later converted into a Chapter 7 bankruptcy. On April 15, 2005, C.R. Stone filed its initial complaint in the adversary proceeding against eight Defendants – Richard Anderson, Gillian Welby, John Marini, Plumb House, Inc., Dalton Builders, Inc., John Marini Management Company, Lenox Norwood LLC, and Framing Company, Inc. Defendants filed Answers and demanded a jury therein. See Bankruptcy Court Docket Nos. 18, 21, 32. C.R. Stone subsequently filed an amended complaint against Defendants on July 10, 2010, asserting twenty independent claims. A true and accurate copy of the Amended Complaint is attached hereto, without attachments, as Exhibit A. Plaintiff's claims include the following:

- Breach of Contract/Breach of Covenant of Good Faith and Fair Dealing (Counts VI, VII, VIII, IX, XV) against Defendants Marini, Marini Management, Plumb House, and/or Welby;

- Conversion (Count IV), Civil Conspiracy (Count V), and Mass. G. L. ch. 93A (Count XI) against all Defendants;

- Interference with Contract/Advantageous Business Relations (Counts X, XVII, XVIII) against Welby, Marini, the Framing Co., Lenox-Norwood, Plumb House, Anderson, and/or Dalton Builders;

- Claims under 11 U.S.C. § 542 (turnover) (Count I), § 549 (post-petition use of property) (Count II), § 548 (fraudulent transfer) (Count III), § 510 (equitable subordination) (Count XII) against all Defendants;

- Recovery of Preferences Pursuant to 11 U.S.C. § 547 (Count XIII) against Marini Management, Plumb House and Dalton Builders;

- Violations of the Automatic Stay (Count XIV), Equitable Estoppel (Count XIX), and Constructive Trust and Accounting (Count XX) against Anderson, Plumb House and Dalton Builders; and

- Breach of Fiduciary Duty (Count XVI) against Welby.

Defendants timely filed Answers and Affirmative Defenses to the Amended Complaint and asserted jury demands. See Docket Nos. 148, 149, 156. Two Defendants -- Anderson and Welby -- neither filed a proof of claim in the bankruptcy nor filed counterclaims in this proceeding. Defendants Plumb House, Dalton Builders, Marini, John Marini Management, and Lenox-Norwood asserted counterclaims against Plaintiff, and filed proofs of claim.[1] A true and accurate copy of these Answers is attached hereto as Exhibit B.

In 2010, Anderson died, and the Court thereafter permitted Plaintiff to substitute Anderson's executor, Charles G. Krattenmaker, Jr. ("Krattenmaker") in his place. In allowing this substitution, the Court also determined that Counts XIX and XX, and Count XI, to the extent that they seek recovery for unfair and deceptive practices, did not survive Anderson's death, and thus were dismissed, and that Count XII for equitable subordination also was dismissed against Anderson. See Docket No. 227.

Factual Background[2]

As demonstrated in its Amended Complaint, Plaintiff's only goal in this lawsuit – by its own clear admission – is to seek to recover damages from Defendants. This is evident by, among other things, Plaintiff's introduction in the Amended Complaint where, over the course of an entire page, Plaintiff spells out all of its claims for "damages" in this proceeding. Each and every one of these claims ties directly to the same core common set of facts, as demonstrated in the Amended Complaint and herein. See Ex. A.

In a Memorandum of Decision dated July 27, 2006 ("Decision"), the Bankruptcy Court

---

[1] Framing Company also filed a proof of claim, but did not file a counterclaim.

[2] Krattenmaker, Plumb House and Dalton Builders, Inc. are at times collectively referred to herein as the "Anderson Defendants." Marini, John Marini Marini Management Company, Lenox-Norwood LLC and Framing Company, Inc. are at times collectively referred to herein as the "Marini Defendants".

3

provided the following summary of the general background and procedural history of this case[3]:

> C.R. Stone Concrete Contractors, Inc. (the "Debtor") is a Massachusetts corporation that operated a business performing concrete contracting, design and installation in all phases of construction. The Debtor filed a Chapter 11 bankruptcy petition in March of 2005, and the case was converted to a Chapter 7 in August, 2005. On April 15, 2005, the Debtor filed its Complaint initiating the instant adversary proceeding (the "Complaint").
>
> ....Christopher Stone ("Stone"), the president of the Debtor, incorporated the Debtor in 2000 and operated it with increasing profitability between the years of 2001 and 2004.
>
> [The corporate Anderson Defendants] are Massachusetts corporations engaged in the business of general contracting and the Debtor was a concrete subcontractor for Plumb House on various projects. Plumb House is the general contractor on two construction sites, The Ridge in Waltham, Massachusetts ("Waltham Project") and The Village at Quarry Hills in Quincy, Massachusetts ("Quincy Project").
>
> The Debtor hired Gillian Welby ("Welby") in December 2003 as the Debtor's Project Manager, and Welby served in that capacity until January 5, 2005. As Project Manager, Welby was responsible for the Debtor's project accounting, billing and change order submissions on the various projects for which the Debtor was a subcontractor....
>
> John S. Marini is the principal of defendants John Marini Management Company ("Marini Management"), The Framing Company ("Framing Co.") and Lenox-Norwood LLC ("Lenox," collectively the "Marini Defendants")....Lenox is a Massachusetts corporation which owns a construction site in Norwood, Massachusetts ("Norwood Project"). The Norwood Project is managed by the Framing Co. and Marini Management is the general contractor on that site.
>
> ....During the fall and winter of 2004, while the Debtor was working on the Norwood, Quincy and Waltham Projects, the Debtor alleges that Welby and Anderson with the assistance of Marini "joined together to strip [the Debtor's] lucrative business away from it and transfer it to Anderson."....
>
> ....The net effect of Welby's actions, claims the Debtor, was to substantially underbill for the Debtor's work on all three projects and to stifle the Debtor's cash flow by January 2005. The Debtor alleges that both Anderson and Marini were aware of and

---

[3] Any facts set forth in the Court's Decision or otherwise which were taken from Plaintiff's Amended Complaint are set forth herein for purposes of this Motion and for the sake of argument only. In other words, Defendants do not endorse Debtor's version of events to the extent these assertions were taken from the allegations in Plaintiff's Amended Complaint. However, for the purpose of this Motion, the allegations as detailed in the Amended Complaint (see Exhibit A) and the factual history set forth in the Bankruptcy Court's Decision provide this Court with sufficient guidance regarding the extent to which each of the claims asserted by Plaintiff against Defendants is contingent on the same set of common facts.

4

assisted in Welby's actions to benefit Anderson. Anderson, Marini and Welby also allegedly contacted the Debtor's suppliers and encouraged them to demand payment from the Debtor despite any contrary terms in the suppliers' agreements with the Debtor.

....The Debtor claims that....[it was] unable to recover any [of its] property and equipment from the [Norwood,] Quincy and Waltham Projects....

....The Debtor...alleges that Welby deleted unsubmitted change orders for the Norwood Project from the Debtor's computer system, forged Stone's signature on various documents including lien release and requisition forms, left the Debtor's documents and records in a state of disarray and improperly delivered the Debtor's proprietary and confidential business information to Anderson....

....On August 31, 2005, Stone committed suicide....

The version of events put forward by the Anderson Defendants and the Marini Defendants is much different than that put forward by...the Debtor. The defendants contend that the Debtor was undone by the folly and failure of its principal, Stone. According to the defendants, Stone had a serious drug problem and many related personal problems. The Anderson Defendants and the Marini Defendants claim that in 2004 Stone took a great deal of money out of the Debtor in the form of personal loans, and they submitted balance sheets showing large personal loans from the Debtor to Stone and other officers of the Debtor. The Marini Defendants and the Anderson Defendants also contend that the Debtor lost a substantial amount of money in 2004 and was on shaky financial ground even before the problems at the Norwood, Quincy and Waltham projects metastasized in December of that year. The Anderson Defendants submitted the Debtor's 2004 balance sheet through November 30, 2004, which shows that as of November 30, 2004 the Debtor's liabilities exceeded its assets by $78,172.86 and that the Debtor had only $3,054.84 in cash.

The reason for their termination of the Debtor, say the Marini Defendants and the Anderson Defendants, was the Debtor's failure to pay suppliers and employees in late 2004, resulting in work delays and the filing of mechanic's liens, and the Debtor's shoddy workmanship. The Marini Defendants point to the affidavit of Robert Kelliher ("Kelliher"), a supervisor on the Norwood Project, in which he states that....the Debtor's work was unsatisfactory and Stone's behavior erratic in the later months of 2004, that the Debtor had misspent funds directed to it specifically for the payment of suppliers, and that the Debtor was responsible for the nonpayment of several suppliers who responded by placing mechanic's liens on the Norwood Project.

See Ex. C hereto, Decision at 2-10 & 23-25 (footnotes omitted); see also id. at 6 (referring to allegations concerning Welby, Anderson and Marini as an "alleged conspiracy").

Additional details regarding the alleged facts asserted with respect to Plaintiff's twenty (20) claims are detailed in the thirty-four (34) page Amended Complaint of Plaintiff. See Ex. A.

## ARGUMENT

### I. WITHDRAWAL OF THE REFERENCE TO THE BANKRUPTCY COURT IS MANDATORY.

#### A. Standard for Withdrawal of Reference.

The Bankruptcy Court's jurisdiction is regulated primarily by statute. See 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases under title 11 or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." The District of Massachusetts has exercised this authority provided by 28 U.S.C. § 157(a) and determined that all bankruptcy matters shall be referred in the first instance to its bankruptcy judges. Local Rule 201.

However, pursuant to 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under [§ 157(a)], on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d); Riley v. Wolverine Procter & Schwartz, LLC, 404 B.R. 1, 2 (D. Mass. 2009).

#### B. "Cause" Exists to Withdraw the Reference.

##### 1. Jury Trial Rights Constitute Cause for Withdrawal.

"The right to a jury trial is an important right, and if it can be vindicated fully only by withdrawal of the reference, then surely there is good cause for the withdrawal." Container Recycling Alliance v. Lassman, 359 B.R. 358, 360 (D. Mass. 2007. Pursuant to 28 U.S.C. § 157(e), a bankruptcy court may conduct a jury trial in a proceeding that may be heard by a bankruptcy judge, but only "with the express consent of all the parties." Local bankruptcy procedure is consistent with the Code's mandate. See, e.g., Local Bankruptcy Rule 9015-1

6

(stating that "[t]he bankruptcy judge may conduct a jury trial pursuant to 28 U.S.C. § 157(e) if the right to a jury trial applies" so long as the parties consent to the jury trial in bankruptcy court).

Courts have consistently determined that cause exists to withdraw the reference to a bankruptcy court where "a party has a right to a jury trial as to a pending issue and refuses, as it may, to have the bankruptcy court conduct the trial." Container Recycling Alliance, 359 B.R. at 360 (granting motion to withdraw reference due to jury demand on claims for breach of contract); Riley, 404 B.R. 1, 2 (D. Mass. 2009) (granting motion to withdraw reference due to jury demand on claims for avoidance of preferential transfers under 11 U.S.C. § 547, avoidance of fraudulent transfers under 11 U.S.C. § 548, recovery of money damages on account of fraudulent and preferential transfers and breach of fiduciary duty); Nickless v. Creare, Inc., 310 B.R. 478, 481 n. 7 (Bankr. D. Mass. 2004) ("Because the Defendants do not consent to a jury trial in this Court, the adversary proceeding must be tried in the district court."); Weiss ex rel. Fibercore, Inc. v. OFS Fitel, LLC, 361 B.R. 315, 317 (D. Mass. 2007) (granting motion to withdraw reference where parties demanded jury); In re Wilson, No. 04-1276, 2005 WL 3320594, *1 (Bankr. D. Mass. Oct. 17, 2005) ("the Bankruptcy Court may not conduct the jury trial" where plaintiff is entitled to jury trial and defendant will not consent to the bankruptcy court hearing the case).

The issue presented here, therefore, is whether Defendants have a right to a jury trial with respect to the twenty (20) claims asserted by Plaintiff in this proceeding. The answer is an unequivocal yes and, accordingly, withdrawal of the reference is the only possible result. These claims, comprised of common law and statutory state law claims and federal claims, should all

be properly heard by a jury given that it is without question that many (if not all) of these claims are jury claims.

### a. Jury Right Exists Where Claims Asserted are Legal and Equitable.

Claims that "seek legal remedies generally implicate the constitutional right to a jury trial . . . ." Nickless v. DiStefano, 472 B.R. 147, 151 (2012). In fact, "[t]he Seventh Amendment provides a right to trial by jury in 'suits at common law' where the amount in controversy exceeds twenty dollars." Id., at 152. "The Supreme Court has defined the phrase 'suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." Id.

Moreover, courts have been clear that where a complaint includes both legal and equitable[4] claims, a jury must adjudicate all of the claims. Id., 472 B.R. at 152. In other words, "[w]hen an action involves a combination of both legal and equitable claims, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. Consequently facts common to legal and equitable claims must be adjudicated by a jury." Id. (citations and quotations omitted). A jury right unquestionably attaches where "additional counts asserted in this action . . . without question trigger the right to a jury trial" and where "the facts relevant to the equitable counts are the same as those relevant to the legal claims." Id. at 154.

---

[4] Further, even equitable claims standing alone may be heard by a jury where they are, in essence, legal claims. Nickless, 472 B.R. at 155 (where equitable claims "may be fairly characterized as claims asserted to collect various debts that the trustee asserts are owed to the estate," then a "right to a trial by jury attaches").

8

In fact, withdrawal of a reference to the bankruptcy court is proper where the right to a jury trial attaches with respect to just one cause of action in an adversary proceeding (but not as to other causes of action therein) and against just one (of several or many) defendant, even if other causes of action do not implicate a jury claim or other defendants have waived their right to a jury. Riley, 404 B.R. at 2, 3; Wilson v. EMC Mortgage Corp., No. 00-16925, 2005 WL 3320594, *1 and n. 1 (Bankr. D. Mass. 2005). By way of example, in Riley, the Court indicated that it was unclear whether a jury right attached to the plaintiff's claim for breach of fiduciary duty. Nonetheless, the Court stated that "this issue is of little consequence to [defendants], given that they would, absent any waiver, be entitled to a jury trial on the other claims." Riley, 404 B.R. at 3. Further, the Riley court stated that even where as to one particular defendant, plaintiff had only plead a claim for breach of fiduciary duty, then "[g]iven the common core of facts, if some of the parties are entitled to a jury trial on some of the claims, it is in the interest of efficiency to withdraw the reference of the entire case." Id. The Court in Wilson echoed Riley's conclusions, stating that "Plaintiff is clearly entitled to a jury trial as to at least one count of its complaint, a count for breach of contract, and therefore the adversary proceeding must be tried to a jury" given Defendant's refusal to consent. Wilson, 2005 WL 3320594 at *1 and n. 1.

### b.    Core vs. Non-Core Distinction Is Not Dispositive.

Furthermore, courts have firmly stated that "the right to trial by jury is not lost simply because an action is asserted in the bankruptcy court, even in a matter designated by Congress as core . . . ." Nickless, 472 B.R. at 152. In fact, the "Court does not consider the distinction between core and non-core matters to be dispositive of whether it has authority to withdraw the reference. The decision to do so is within the purview of the district court." Lacey v. BAC Home Loans Servicing, LP, Adv. No. 10-1249, 2011 WL 5117767, *8 (Bankr. D. Mass. Oct. 27,

9

2011); Braunstein v. Dickinson, 156 B.R. 111 (Bankr. D. Mass. 1993) (finding that the bankruptcy court "lacks authority to conduct jury trials in core proceedings").

### c. A Jury Trial In District Court Is Required.

Here, Plaintiff asserts twenty (20) claims against Defendants, which claims fall into two general categories. Fourteen (14) such claims are state law claims, which include claims for (a) breach of contract, including claims for breach of the covenant of good faith and fair dealing (see Counts VI, VII, VIII, IX and XV), (b) conversion (Count IV), (c) civil conspiracy (Count V), (d) interference with advantageous contractual relations/business relations (Counts X, XVI, and XVIII), (e) breach of fiduciary duty (Count XVI), (f) equitable estoppel (Count XIX), (g) constructive trust/accounting (Count XX), and (h) claims under Mass. G. L. ch. 93A. There is no question that all of these claims are non-core, and thus could survive outside the bankruptcy proceeding alone. The presence of these claims alone, most of which are purely legal in nature, dictates a withdrawal of the reference. See, e.g., Wilson, 2005 WL 3320594 at *1; Nickless, 472 B.R. at 155.

The remaining six (6) claims relate to the bankruptcy proceeding and stem from Chapter 11. These claims include claims pursuant to: (a) 11 U.S.C. § 542 for failure and refusal to turnover C.R. Stone's business and property (Count I); (b) 11 U.S.C. § 549 for Unauthorized Post-Petition Use of Debtor's Property Without Compensation (Count II); (c) 11 U.S.C. § 548 for Fraudulent Transfer (Count III); (d) conversion of C.R. Stone's Property (Count III); (e) Equitable Subordination Pursuant to 11 U.S.C. § 510 (Count XII); (f) Recovery of Preferences Pursuant to 11 U.S.C. § 547 (Count XIII); and (g) Violations of the Automatic Stay (against the Anderson Defendants and Marini (Count XIV). These federal claims asserted by Plaintiff, like the state law claims, consist almost exclusively of legal claims, and thus provide an independent

10

basis, separate and apart from the legal nature of the state law claims, warranting the withdrawal of the reference and confirming Defendants' unequivocal right to a jury trial in district court absent their consent to a jury trial in bankruptcy court. See, e.g., Nickless, 472 B.R. at 154 (fraudulent transfer claim "is generally considered legal in nature"); Riley, 404 B.R. at 2 ("It is undisputed that [the defendants] would, ordinarily, be entitled to a jury trial on the claims for fraudulent and preferential transfers.").

Thus, even if any of these twenty (20) claims could properly be categorized as "equitable," the fact that there is at least (but, in fact, many more) one unequivocally legal claim is sufficient to permit the reference in the bankruptcy matter to be withdrawn. Moreover, even if only one, for example, defendant did not consent to a jury in the bankruptcy court on these claims, or if some of the defendants waived their right to a jury (e.g., by filing a proof of claim that was deemed to constitute a waiver), withdrawal of the reference is still the proper course of action in light of the lack of consent from all defendants as to purely legal claims.

Here, it is without question that many (if not most) of the claims are purely legal in nature and thus warrant a jury claim. Furthermore, there can be no dispute that all of these claims asserted by Plaintiff stem from a common set of facts, which further serves as the basis for a jury in the district court to hear and determine this matter. Such a common core of facts warrants a jury trial as to all claims.

Moreover, Defendants have timely filed this Motion, given that they both demanded a jury trial from the outset of this litigation and that the case is now ready for trial, thus warranting the transfer of this matter to the district court.

### 2. Judicial Economy Constitutes "Cause" For Withdrawal of the Reference.

The interest of judicial economy is yet another reason demonstrating that cause for withdrawal of the references exists, so that a jury trial can occur in this Court. "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." Lacey v. BAC Home Loans Servicing, LP, Adv. No. 10-1249, 2011 WL 5117767, *7 (Bankr. D. Mass. Oct. 27, 2011).

Indeed, case law is clear that where some of the defendants -- but not all -- in an adversary proceeding have filed a claim against the estate, withdrawal of the reference as to all claims against all defendants may be proper, where any of the claims otherwise should be tried to a jury. Weiss ex rel. Fibercore, Inc. v. OFS Fitel, LLC, 361 B.R. 315, 317 n. 1 (D. Mass. 2007) (stating that "[i]t is true that [one defendant] has filed a claim against [the] estate, and would thus enjoy a diminished right to a jury trial before a district court judge. However, given [another defendant's] entitlement to withdrawal of the reference, it would be a waste of judicial resources to leave [the other defendant which filed a claim] behind in the bankruptcy court."); see also Riley, 404 B.R. at 3 (stating that where plaintiff's claims as to one particular defendant could be considered equitable, then "[g]iven the common core of facts, if some of the parties are entitled to a jury trial on some of the claims, it is in the interest of efficiency to withdraw the reference of the entire case"); Riley v. Crapser, No. 12-10439 (D. Mass. June 5, 2012) (withdrawing reference and stating that "[o]n balance, then, economy and efficiency are best served in this instance by bringing the complaint to this court where a simultaneous trial of both theories (legal and equitable) on a largely common factual presentation can be had before a tribunal with undoubted authority"); Rebein v. Kost, No. 06-204, 2006 WL 3842124, *3 (D. Kan. Nov. 3,

12

2006) (where two of three defendants waived their right to a jury trial, and plaintiff asserted the same seven claims against each of the three defendants, which claims arose out of the same set of facts, the court determined that it "will conduct a jury trial in the district court" and try all of the claims against all of the defendants together because "[s]eparating the claims against [the defendants who waived their jury right] would be a waste of judicial resources and the parties' time and money").

Notwithstanding that some of the Defendants here have filed proofs of claim against Plaintiff, there can be no dispute that two Defendants have not – Krattenmaker and Welby – and each of these Defendants has demanded a jury. Plaintiff has asserted more than ten (10) claims against Krattenmaker (see Counts I, II, III, IV, V, X, XI, XIV, XVII, XVIII, XIX, XX), and ten (10) claims against Welby (Counts I, II, III, IV, V, X, XI, XII, XV, and XVI), the majority of which claims are legal, and not equitable, in nature. There is absolutely no dispute at all that these Defendants are entitled to a jury trial in this Court on most, if not all, of these claims. Accordingly, even if the Court were to find that the other Defendants somehow submitted themselves to the bankruptcy court's jurisdiction by filing a proof of claim, withdrawal of the reference is proper to preserve judicial resources, prevent res judicata, and ensure consistent rulings.

## CONCLUSION

WHEREFORE, Defendants hereby request that this Court grant their Motion to Withdraw the Reference.

PLUMB HOUSE, INC., DALTON BUILDERS, INC., and CHARLES KRATTENMAKER, as Executor for the Estate of Richard Anderson,

By their Attorneys,

/s/ Vincent J. Pisegna*

---

Vincent J. Pisegna, BBO #400560
Jill Brenner Meixel, BBO #652501
KROKIDAS & BLUESTEIN LLP
600 Atlantic Avenue, 19th Floor
Boston, Massachusetts 02210
(617) 482-7211
vpisegna@kb-law.com
jmeixel@kb-law.com


GILLIAN WELBY
By her Attorney,

/s/ Charles P. Kindregan*

---

Charles P. Kindregan, BBO # 554947
LOONEY & GROSSMAN, LLP
101 Arch Street
Boston, MA 02110
(617) 951-2800
ckindregan@lgllp.com


JOHN S. MARINI,
JOHN MARINI MANAGEMENT COMPANY,
LENOX-NORWOOD LLC, and
THE FRAMING COMPANY, INC.
By their Attorney,

/s/ James S. Singer*

---

James S. Singer, BBO #464560
RULDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
(617) 723-7700
jsinger@rflawyers.com

Dated: April 9, 2013

\*I, Vincent J. Pisegna, hereby represent that I have authority and consent to electronically file this Memorandum of Law In Support of Defendants' Motion For Withdrawal of Reference.